IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KEVIN WILLS, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CASE NO. |
| vs. | **JURY TRIAL DEMANDED** |
| STARBUCKS CORPORATION, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Now comes the Plaintiff, Kevin Wills ("Wills" or "Plaintiff"), on behalf of himself and all similarly situated individuals, and for his Class Action Complaint states as follows:

## A. INTRODUCTION

1.      This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") on behalf of all consumers who were the subject of consumer reports obtained by Defendant Starbucks Corporation ("Starbucks") and its subsidiaries and affiliates as a precondition of employment with Starbucks between September 20, 2015 and the conclusion of this litigation (the "Class Period").

2.      Starbucks routinely obtains and uses consumer reports to conduct background checks on prospective employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action, including failure to hire.

3.      While the use of consumer reports for employment purposes is not *per se* unlawful, it is subject to strict disclosure requirements under the FCRA. The FCRA, 15 U.S.C. §1681b(b)(3)(A), requires that before taking any adverse action based in whole or in part on a consumer report used for employment purposes, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (a) a copy of the report, and (b) a description in writing of the rights of the consumer under the FCRA, 15 U.S.C. §1681g(c)(1).

4.      Starbucks has willfully violated the requirements of 15 U.S.C. §1681b(b)(3)(A) by taking adverse employment action against Plaintiff and others based on a consumer report, without first providing Plaintiff and others with a copy of the pertinent consumer report and a written description of their rights under the FCRA.

## B. JURISDICTION AND VENUE

5.     This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

6.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of allegations set forth in this case took place in this District.

## C. PARTIES

7.     Plaintiff Kevin Wills ("Plaintiff") is an adult individual who resides in Georgia, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8.     Starbucks is a corporation that uses "consumer reports" for "employment purposes", as those terms are defined by 15 U.S.C. § 1681a(d) and (h). Starbucks takes "adverse actions," as that term is defined by 15 U.S.C. § 1681a(k), based on consumer reports. Starbucks took adverse action against Plaintiff from its location in Buford, Georgia.

## D. FACTUAL ALLEGATIONS

9.     Plaintiff applied in person for employment with Starbucks in September 2015 at its Buford, Georgia store location.

10.     Plaintiff was immediately considered for the position following a successful interview with the Buford store manager Lawson Little and as he had worked for Starbucks on several occasions in the past as a Barista and had an excellent work history.

3

11.    After his in-person interview, Plaintiff was preliminarily hired for the position to the results of his Criminal background check.

12.    Plaintiff has no criminal history.

13.    Having no criminal history, he did not anticipate any problem with his background report.

14.    On September 19, 2015, Plaintiff contacted Lawson Little to advise of his availability so she could plan accordingly for the drafting of the next schedule.

15.    In the meantime, Starbucks obtained and used a background report prepared by Accurate Background, Inc. to make an employment decision regarding Plaintiff.

16.    The consumer report provided to Starbucks included a statement that Kevin W. *Willis* of Minnesota had been convicted twice of domestic violence. Plaintiff has never used the name Kevin Willis and does not spell his name like Kevin *Willis*, nor has he ever resided in Minnesota.

17.    The information was erroneously mixed into his information by Starbucks Background reporting company.

18.    Upon receipt of the consumer report, Starbucks took adverse employment action against Plaintiff by informing him telephonically that he could not work for Starbucks.

19.     Indeed, Lawson Little explicitly stated that the criminal history on his consumer report disqualified him from working for the coffee house.

20.     On September 22, 2015, Plaintiff received a letter from Accurate Background, Inc. on behalf of Starbucks enclosing a copy of his background report. This was days after being orally declined employment, in violation of §1681b(b)(3)(A) of the FCRA.

21.     Mrs. Little provided Plaintiff with the telephone number of the background company and called them to advise them of the error on or about September 22, 2015.

22.     Starbucks routinely obtains and uses consumer reports, including background reports, on its job applicants as part of a standard screening process.

23.     Starbucks typically does not provide job applicants with a copy of their consumer reports before it takes adverse action against them based on the information in such reports, despite being required to do so by §1681b(b)(3)(A) of the FCRA.

24.     This practice violates one of the most fundamental protections afforded to job applicants under the FCRA, and runs counter to longstanding regulatory guidance. The Federal Trade Commission ("FTC") has long held that Section 604(b)(3)(a) [15 U.S.C. § 1681b(b)(3)(A)] "requires that all employers who use

consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information in case the report is inaccurate or incomplete." See Federal Trade Commission letter dated June 9, 1998 to A. Michael Rosen, Esq.

25. A primary reason that Congress required that a person intending to take an adverse action based on information in a consumer report provide the report to the consumer before taking the adverse action is so the consumer has time to review the report and dispute information that may be inaccurate, or discuss the report with the prospective employer before adverse action is taken. See Federal Trade Commission letter dated December 18, 1997 to Harold R. Hawkey, Esq. ("[T]he clear purpose of the provision to allow consumers to discuss reports with employers or otherwise respond before adverse action is taken").

26. Consistent with that purpose, federal courts have held that the prospective employer must provide the report to the consumer "a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report." *Williams v. Telespectrum, Inc*., 2006 U.S. Dist. LEXIS

101162, at *18 (E.D. Va. November 7, 2006); *Beverly v. Wal-Mart Stores, Inc*., 2008 U.S. Dist. LEXIS 2266 (E.D. Va. January 11, 2008) (quoting Williams). In *Reardon v. Closetmaid Corporation*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. April 27, 2011), the court certified a class action for prospective employees who did not receive a copy of their credit report at least five days before being notified that the employer might take adverse action.

27.     By means of these cases and others construing § 1681b(b)(3)(A), Starbuck had substantial notice that its conduct violated the FCRA.

28.     By failing to provide Plaintiff and other Class members with copies of their consumer reports prior to taking adverse action against them based on the reports, Starbucks willfully disregarded the case law, regulatory guidance, and the plain language of the FCRA, § 1681b(b)(3)(A).

29.     Starbuck's conduct was a result of its deliberate policies and practices, and was taken in reckless disregard for a consumer's rights under the FCRA, and further assumed an unjustifiably high risk of harm.

30.     Starbucks was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Starbucks.

## E. CLASS ALLEGATIONS

31.     Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth fully herein. Plaintiff brings this action individually and as a class action, pursuant to Rules 23(a) of the Federal Rules of Civil Procedure, on behalf of the following Class:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), who had an adverse action taken against them by Starbucks during the Class Period, based in whole or in part on a consumer report used for employment purposes by Starbucks, and to whom Starbucks did not provide a copy of the consumer report and a written description of rights as provided in 15 U.S.C. § 1681b(b)(3)(A)(ii) at least five business days before the adverse action was taken.

33.     The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Starbucks, Starbucks regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and relies on such information, in whole or in part, as a basis for adverse action. Starbucks's website states that Starbucks operates over 25,000 locations worldwide. See https://news.starbucks.com/uploads/documents/AboutUs-Timeline-1.26.17.pdf. (last visited 08/10/2017).

34.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal questions are whether Starbucks violated the FCRA by taking adverse action against Plaintiff and Class members based on information in a consumer

report, without first providing a copy of the report and the written description of FCRA rights to those persons; and whether the violations were willful.

35.    Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories. Starbucks typically uses consumer reports to conduct background checks on prospective employees. Starbucks typically does not provide copies of consumer reports to prospective employees before taking adverse action based on information in such reports.

36.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling class actions and claims under the FCRA. Neither Plaintiff nor her counsel has any interests that might cause them not to vigorously pursue this claim.

37.    This action should be maintained as a class action because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is a superior method for the fair and efficient adjudication of this controversy. Starbucks's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Class do not have an interest in

pursuing separate actions against Starbucks, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Starbucks's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

38.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

### F.  CLAIM FOR RELIEF

39.     Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth fully herein.

40.     Starbucks used a consumer report for employment purposes, and took

adverse action against Plaintiff and Class members, based in whole or in part on the consumer report.

41.    Starbucks willfully failed to comply with the requirements of the FCRA, § 1681b(b)(3)(A) by failing to provide Plaintiff and Class members with a copy of the consumer report and a description of rights under the FCRA before taking the adverse action.

42.    Pursuant to 15 U.S.C. § 1681n, Starbucks is liable to Plaintiff and all Class members for its failure to comply with FCRA, § 1681b(b)(3)(A), in an amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation, (2) punitive damages in an amount to be determined by the jury, (3) attorney fees, and (4) costs.

## G. JURY TRIAL DEMANDED

43.    Plaintiff demands a trial by Jury.

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Starbucks, and award him:

a.  An order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

b.  An order declaring that Starbucks's actions are in violation of the

11

FCRA;

c.  Statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member, pursuant to 15 U.S.C. § 1681n(a)(l);

d.  Punitive damages to be determined by the jury, pursuant to 15 U.S.C. § 1681n(a)(2);

e.  Attorney fees and costs, pursuant to 15 U.S.C. § 1681n(a)(3); and

f.  Such other relief as may be just and proper.


Respectfully submitted,


**SKAAR & FEAGLE, LLP**


By:      _/s/ James M. Feagle
            James M. Feagle
            Georgia Bar No. 256916
            Cliff R. Dorsen
            Georgia Bar No. 149254
            2374 Main Street, Suite B
            Tucker, GA 30084
            Telephone:  (404) 373-1970
            Facsimile:   (404) 601-1855

            Kris Skaar
            Georgia Bar No. 649610
            Justin T. Holcombe
            Georgia Bar No. 552100

133 Mirramont Lake Drive
Woodstock, GA 30189
Telephone:  (770) 427-5600
Facsimile:   (404) 601-1855


O'TOOLE, McLAUGHLIN, DOOLEY
& PECORA, CO., LPA

*-Pro Hac Petitions will be forthcoming*
Matthew A. Dooley (Ohio #0081482)
Anthony R. Pecora (Ohio #0069660)
5455 Detroit Road
Sheffield Village, Ohio  44054
Telephone:  (440) 930-4001
Facsimile:   (440) 934-7208
Email:
            apecora@omdplaw.com
            mdooley@omdplaw.com

*Counsel for Plaintiff*