# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KEVIN WILLS and JONATHAN       :
SANTIAGO ROSARIO,              :
on behalf of themselves and all :
others similarly situated,     :
                               :
      Plaintiffs,          :    Consolidated
                               :    Civil Action File No (s).
                               :    1:17-cv-03654-CAP-CMS
  v.                          :    1:17-cv-01730-CAP-CMS
                               :
STARBUCKS CORPORATION,         :
                               :
      Defendant.           :
_____ :

## PLAINTIFFS'  UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................. iii

I.      INTRODUCTION ........................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................3

        A.      The Settlement Class ...........................................................4

        B.      Benefits of the Settlement ...................................................4

        C.      The Notice Program .............................................................6

        D.      Reaction of Settlement Class Members. ..............................8

        E.      Releases ...............................................................................10

III.    ARGUMENT AND AUTHORITY ...............................................10

        A.      Analysis under the Amended Rule 23 Process .................12

                1.      The Class Was Adequately Represented. ................12

                2.      The Proposed Settlement Was Negotiated at Arm's
                        Length. .....................................................................15

                3.      The Relief is Fair, Reasonable, and Adequate........16

                        a)      The Risks, Costs, and Delay of Continued
                                Litigation.......................................................17

                        b)      The Method of Distributing Relief is Effective.............18

                        c)      The Terms Relating to Attorneys' Fees are
                                Reasonable.....................................................19

                        d)      Agreements Required to be Identified By Rule
                                23(e)(3). ........................................................19

                4.      Class members are Treated Equitably Relative to Each
                        Other...........................................................................20

B.    The Court Should Certify the Proposed Settlement Class Because the Rule 23(a) Requirements are Satisfied............................................20

    1.    Numerosity:.................................................................20

    2.    Commonality:..............................................................20

    3.    Typicality: .................................................................21

    4.    Adequacy of Representation:.....................................21

C.    The Requirements of Rule 23(b)(3) Are Also Satisfied ...................21

    1.    Predominance:...........................................................22

    2.    Superiority:................................................................23

D.    Notice to the Settlement Class Complied with Due Process and Rule 23 and is Best Practicable Notice....................................................23

E.    Other General Considerations Supporting Approval.........................25

    1.    Broad Discretion of the Court...................................25

    2.    Consideration of several Bennet Factors analysis gives additional support for Approval of the Settlement .................25

        a)    Range of Reasonableness .............................27

        b)    Settlement Occurred at Late Stage of Litigation with Full Appreciation of Risks ....................28

        c)    Counsel for Plaintiffs are Convinced that the Parties' Agreement is Fair, Reasonable, Adequate, and in the Best Interests of the Class Members............28

F.    Attorneys' Fees, Expenses and Service Awards................................29

IV.    CONCLUSION.............................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Agan v. Katzman & Korr, P.A.*,
    222 F.R.D. 692 (S.D. Fla. 2004) ..................................................................... 23

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...................................................................................... 22

*Anthem*,
    327 F.R.D. .................................................................................................... 22

*Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002) ............................................................. 10, 13

*Bennet v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ...................................................................... 26

*Bennett v. Behring Corp.*,
    96 F.R.D. 343 (S.D. Fla. 1982) .................................................................... 26

*Berman v. General Motors, LLC*,
    2019 WL 6163798 (S.D. Fla. Nov. 18, 2019) ............................................... 12

*Brotherton v. Cleveland*,
    141 F. Supp. 894 (S.D. Ohio 2001) ................................................................ 8

*Brown v. Electrolux Home Prods.*, Inc.,
    817 F.3d 1225 (11th Cir. 2016) .................................................................... 22

*Carriuolo v. Gen. Motors Co.*,
    823 F.3d 977 (11th Cir. 2016) ...................................................................... 22

*Chun-Hoon v. McKee Foods Corporation*,
    716 F. Supp. 2d 846 (N.D. Cal. 2010) ............................................................ 8

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    258 F.R.D. 545, at 555 (N.D. Ga 2007) ......................................................... 12

*Cotton v. Hinton*,
 559 F.2d 1326 (5th Cir. 1977) .................................................................. 14, 29

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001)........................................................................... 15

*Dukes v. Air Canada*,
 2020 WL 487152 (M.D. Fla. Jan. 27, 2020)................................................. 22

*Garner v. State Farm Auto Ins. Co.*,
 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010).................................................. 9

*Grady v. de Ville Motor Hotel, Inc.*,
 415 F.2d 449 (10th Cir. 1969) ...................................................................... 26

*Gumm v. Ford*,
 2019 WL 2017497 (M.D. Ga. May 7, 2019) .................................................. 12

*Hall v. Frederick J. Hanna & Assocs., P.C.*,
 2016 WL 2866081 (N.D. Ga. May 10, 2016).................................................. 12

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ...................................................................... 27

*In re Austrian & German Bank Holocaust Litig.*,
 80 F. Supp. 2d 164 (S.D.N.Y. 2000) .............................................................. 8

*In re Checking Account Overdraft Litig.*,
 275 F.R.D. 654 (S.D. Fla. 2011)................................................................... 15

*In re Checking Overdraft Litig.*,
 830 F. Supp. 2d 1330 (S.D.Fla. 2011) ..................................................... 13, 27

*In re Domestic Air Transp. Antitrust Litig.*,
 148 F.R.D. 297 (N.D. Ga. 1993)............................................................ *passim*

*In re Home Depot, Inc. Customer Data Sec. Breach Litig.*,
 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .......................................... 17, 22

*In re U.S. Oil & Gas Litig.*,
 967 F.2d 489 (11th Cir. 1992) .................................................................. 10, 13

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001).................................................... 14, 16, 28, 29

*Johnson v. Brennan*,
    WL 1872405 (S.D.N.Y. May 17, 2011) ......................................... 16

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012) ....................................................... 24

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) ........................................................ 14

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ........................................... 17

*Lopez v. Hayes Robertson Grp., Inc.*,
    2015 WL 5726940 (S.D. Fla. Sept. 29, 2015) ................................. 23

*Lunsford v. Woodforest Nat'l Bank*,
    2014 WL 12740375 (N.D. Ga. May 19, 2014)................................. 17

*Melanie K. v. Horton*,
    2015 WL 1799808 (N.D. Ga. Apr. 15, 2015)............................ 10, 26

*Milliron v. T-Mobile USA, Inc.*,
    2009 WL 3345762 (D.N.J. Sept. 14, 2009) ..................................... 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................... 8

*Nelson v. Mead Johnson & Johnson Co.*,
    484 F. App'x 429 (11th Cir. 2012) ................................................. 16

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) .............................................. 8

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)........................................................................ 24

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ........................................................ 8

*Safeco Insurance Co. of America v. Burr*,
    551 U.S. 47 (2007) ............................................................................. 1

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
    2010 WL 2486346 (C.D. Cal. June 15, 2010) ................................. 16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................... 21

*Wilson v. Everbank*,
    2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ..................................... 16

**Statutes**

15 U.S.C. § 1681n ...................................................................................... 2

28 U.S.C. § 1715 ........................................................................................ 6

**Federal Rules**

Fed. R. Civ. P.23 ....................................................................... 12, 25, 27

Fed. R. Civ. P. 23(a) ....................................................................... 3, 26

Fed. R. Civ. P. 23(b)(3) ........................................................................ 19

Fed. R. Civ. P. 23(e) ..................................................................... 10, 11

Fed. R. Civ. P. 23(e)(2) ......................................................... 10, 11, 12

Fed. R. Civ. P. 23(e)(2)(A) .................................................................. 14

Fed. R. Civ. P. 23(e)(2)(C) .................................................................. 18

# I.    INTRODUCTION

Plaintiffs Kevin Wills and Jonathan Santiago Rosario ("Plaintiffs" or the "Class Representatives") respectfully request that the Court enter an order granting final approval of the parties' Settlement Agreement that resolves several years of hotly contested litigation. Although the Class Representatives believe that they have presented a strong case that would likely succeed at trial, they also recognize that there are a few obstacles that could stand in the way of achieving a better result through further litigation. Thus, the Class Representatives believe that it is in the best interest of the Class to settle the matter.

Since the outset of this case, Defendant Starbucks Corporation ("Defendant" or "Starbucks") has disputed liability and contested class certification. Indeed, its motion for summary judgment and opposition to class certification were both pending at the time of settlement. Even assuming these issues are resolved in favor of the Plaintiffs, they must still prove that Starbucks willfully violated the Fair Credit Reporting Act ("FCRA"). *See Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007) (willfulness standard is not met "unless the action is not only a violation [of the FCRA] under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.").

1

The time and expense to try those issues would be considerable. Although the Plaintiffs are confident that they could prove their case, the risks of failing to do so are significant enough to convince the Plaintiffs and their counsel that the Settlement Agreement reached with Starbucks outweighs the gamble and expense of further litigation.

In short, the Settlement Agreement provides for a three-tiered system to compensate 8,000 class members. In Tier 1, all class members who do not affirmatively opt-out receive a non-expiring and fully transferable $125.00 Starbucks gift card. To qualify for Tier 2 benefits, a class member must only answer six "yes or no" questions related to their application experience to receive either an additional $90.00 check or a second $125.00 non-expiring and fully transferrable Starbucks gift card. Similarly, a Class Member may qualify for Tier 3 benefits by completing a questionnaire and providing additional documents verifying that their background report was inaccurate and that they were unable to obtain employment for at least 30 days. These Tier 3 claimants will receive an additional $750.00 check. Thus, in total, a Class Member may be eligible to receive up to $1,000.00 – the statutory damage cap under 15 U.S.C. § 1681n. Importantly, all Class Members in Tier 3 have been provided direct access to Class Counsel to assist with the claim process.

Moreover, in addition to significant financial recovery, Starbucks has changed its background screening process for new job applicants. This will ensure that applicants with adverse background information are treated fairly in the future.

The Court's March 5, 2020 preliminary finding that the settlement was fair, reasonable, and adequate, and that the prerequisites to a class action under Fed. R. Civ. P. 23(a) have been satisfied, was well-founded. (Doc. 48). The lack of any objection or request for exclusion from the Class confirms that the settlement was reasonable and affirms that the absence of any governmental objector was intentional.

In support of this memorandum, the Class Representatives submit the Declarations of James M. Feagle (Exhibit 1) and Jennifer M. Keough (the CEO of the Class Administrator "JND") (Exhibit 2).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Wills and Rosario each brought a consumer class action against Starbucks in Georgia and Washington, respectively. Both complaints similarly, but separately, asserted that Starbucks systematically violated section 1681b(b)(3) of the FCRA – the "pre-adverse action notice" requirement – by using consumer reports to make adverse employment decisions without first providing the applicant with a copy of the report and a summary of rights under the FCRA.

Only after successfully defending a motion to dismiss, conducting voluminous and contested discovery, and briefing both summary judgment and class certification, were the parties able to engage in protracted settlement negotiations. These discussions included not only extensive in-person and telephonic mediation sessions, but also extensive post-settlement negotiations, which required an additional full day of remote mediation five months after the initial mediation to finalize the details of the three-tier system. The following are the material terms of the Settlement:

### A.    The Settlement Class

The proposed Settlement Class is defined as follows:

> The Settlement Class includes all persons and entities who, from December 21, 2011 through and including September 19, 2017, applied for employment with Starbucks in the United States who were the subject of a consumer report that was used by Starbucks to take an adverse employment action against such applicant. The Settlement Class does not include Starbucks, any affiliate, parent, or direct or indirect subsidiary, or any entity that has a controlling interest therein, or their current or former directors, officers, managers, employees, partners, advisors, counsel, and their immediate families. The Settlement Class also does not include any persons who validly requested exclusion from the Settlement Class.

*See* Settlement Agreement and Release of Claims at § 1.26. (Doc. 47-2).

### B.    Benefits of the Settlement

First, the unrelated filings of Plaintiffs' two class actions caused Starbucks to make substantial changes to its background screening procedures. The modifications

ensure that prospective employees have a reasonable period of time to dispute or contextualize information contained in their background report. Moreover, the modifications Starbucks has made will prevent future applicants with inaccurate background reports from having to endure the hassle and injustice of an immediate termination without any opportunity to correct the error and save the job opportunity.

Equally important, the Settlement Agreement provides for: (1) tangible cash benefits system for Class Members; (2) compensation for Class Counsel and Class Representatives; and (3) administration costs. Through a separate motion, Class Representatives and Class Counsel have requested the approval of fees and costs. (Doc. 52). If approved, the two Class Representatives would also receive an individual settlement and service award of $10,000 each – for a total combined payment to the Class Representatives and Class Counsel of $1,285,000.

Third, Starbucks agreed to separately pay the Class Administrator, JND Legal Administration Co. ("JND"),[1] approximately $52,091.00, for its actual fees and expenses in administering the settlement. The administration cost payment will not lower, conflict with, or adversely affect any Class Member's benefits.

---

[1]    JND has vast experience and was the chosen Class Administrator in the landmark litigation involving Equifax's 2017 security breach, which affected nearly 50 million individuals.

### C.    The Notice Program

Pursuant to the Court-approved notice plan, direct individual notice of the Settlement Agreement was disseminated to Class Members by both an electronic mailing and regular mailing campaign. JND successfully delivered direct notice to over 94%[2] of Class Members.  The emailed and mailed notices were supplemented with an interactive settlement website maintained by JND. Additionally, Class Counsel have undertaken the extraordinary task of contacting every Tier 3 claimant to date (as well as some Tier 2 claimants) to assist with documenting Tier 3 claims. They will also be contacting and assisting each Tier 3 claimant who files a claim between the Final Fairness Hearing and the August 31, 2020 Tier 3 Claim Deadline.

JND initially provided a Notice of Proposed Class Action Settlement under 28 U.S.C. § 1715 ("CAFA Notice") via certified mail on March 13, 2020.  Ex. 2 at ¶¶ 4-7, Approximately three weeks later, JND then sent initial notices to each of the 8,000 Class Members, mostly via email on April 3, 2020. *Id.* at ¶ 9. Of the initial 7,548 emailed notices, 1,123 were returned as undeliverable. For the 452 Class Members for whom no email address was available, JND mailed postcard notices via first-class mail to the mailing addresses provided by Starbucks during the application process after updating the addresses through a national change of address

---

[2]    Notice was successfully delivered by either mail or email to 7,537 of the 8,000 Class Members (approximately 94.2125% of all Class Members).

database. *Id.* at ¶¶ 9-10. JND also mailed postcard notices to 1,123 class members for which the April 3, 2020 email to them bounces.  There was a total of 471 undelivered notices for the entire 8,000 class members.  Between the email to most of the class with know email addresses, postcard notices to those without email and to those whose email bounced, the notice program reached 94.11% of the Class Members, (7,529 of 8,000). *Id.* at ¶ 11.

In addition to the high delivery rate, JND also established an interactive website, [www.willsstarbucksclassaction.info](www.willsstarbucksclassaction.info), through which Class Members could view settlement documents and make claims. *Id.* at ¶ 12. All claims were processed even without a claim number.  *Id.* at ¶ 13. These interactive websites often act as a catch-all notice source, and this one has been extremely effective since its creation with at least 4,691 total views by at least 995 unique visitors as of July 22, 2020.  *Id.* at ¶ 13.

JND also developed protocols and a database to assist in processing claims, calculating payments, and helping Class Members cure any deficient claims. The claims process is governed by the Settlement Agreement and employs a variety of techniques to facilitate access and participation, including the creation of a toll-free information line and access to live operators during normal business hours. *Id*. at ¶ 14.

### D.    Reaction of Settlement Class Members.

The reaction of Class Members to this settlement has been unequivocally positive. There were **<u>zero</u>** objections filed, and **<u>zero</u>** Class Members have opted out. *Id.* at ¶¶ 17,19. This combination of no objector or opt-out requests is very rare for a class of 8,000 individuals. This is strong evidence that the Settlement Agreement is fair and reasonable and should be approved. *See, e.g.*, *Chun-Hoon v. McKee Foods Corporation*, 716 F. Supp. 2d 846, 852 (N.D. Cal. 2010) ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement."); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Brotherton v. Cleveland*, 141 F. Supp. 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002) ("We conclude that the district

court did not abuse its discretion in determining that the settlement, from which an extremely small percentage of class members opted out, was fair, reasonable and adequate . . . .").

Moreover, in addition to no class member objections, there has been no government intervention or objection. Following the CAFA notice, no state attorney general nor U.S. Attorney General objected or sought to intervene. The lack of governmental objection or intervention into this matter, particularly given the size of the class, strongly implies each governmental organization that received a CAFA notice thought the settlement was fair and reasonable. Thus, this factor weighs in favor of settlement approval. *See Garner v. State Farm Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. April 22, 2010).

Finally, as of July 2, 2020, the Class Administrator received a total of 230 timely claims forms for Tier 2 and Tier 3 relief. This represents an overall claim rate of approximately 2.9%, which JND's learned opinion falls within an average range for class action settlements that provide similar benefits. Ex. 2 at ¶ 24. This average claims rate is particularly impressive given the notices were sent during the epicenter of the COVID-19 pandemic. Further, Claims will also likely continue to modestly increase between the filing of this motion and the Tier 3 filing deadline on August 31, 2020 (approximately 6 weeks after the scheduled final fairness hearing set for July 15, 2020).

### E.    Releases

The Class Representatives have agreed to give Starbucks a broad and general release of all claims against Starbucks for violation of any state or federal law relating to the facts at issue in this case. Class Members who receive cash or gift card payments under this settlement will only be releasing claims under FCRA § 1681(b). (Doc. 47-2 at §§ 1.19 and 5.03).

## III.    ARGUMENT AND AUTHORITY

"Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is 'fair, reasonable, and adequate.'" *Melanie K. v. Horton*, No. 14-710, 2015 WL 1799808, at *2 (N.D. Ga. Apr. 15, 2015) (quoting Fed. R. Civ. P. 23(e)(2)). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. Additionally, "[t]here is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("In assessing the settlement, the Court must determine whether it

falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.") (internal citation omitted).

The December 2018 amendments to Rule 23 make clear that the parties should present a relatively short and focused list of core primary procedural considerations and substantive qualities to the court for consideration of the fairness of the settlement. *See* Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. The specific considerations include whether (1) the class was adequately represented; (2) the settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal, how the relief will be distributed, the terms governing attorney's fees; and any side agreements; and (4) whether class members are treated equitably relative to each other. Fed. R. Civ. P. 23(e). The 2018 Advisory Committee Notes to Rule 23 also clearly note that "[t]he goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."

Additionally, the Advisory Committee Notes also specifically acknowledge that each circuit's own set of evolved factors in determining final fairness have not been overturned and remain valid considerations for courts to consider in determining the fairness of final approval.  Although some of the old *Bennet* factors may be duplicative or irrelevant in light of the amendment, a few are still used in

district courts within this Circuit.[3]  Both the Rule 23 core factors and the additional

relevant *Bennet* factors counsel that final approval of this Settlement is warranted.

## A.    Analysis under the Amended Rule 23 Process

The first step in the amended process for settlement approval is a preliminary

fairness determination, which the Court found and issued in its Order Directing

Notice to the Class on March 5, 2020. (Doc. 48). After class notice, the second step

in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2); *see also* Manual

for Complex Litigation, § 21.633-34; *Hall v. Frederick J. Hanna & Assocs., P.C.*,

No. 15-3948, 2016 WL 2866081 (N.D. Ga. May 10, 2016).

### 1.    The Class Was Adequately Represented.

Adequacy of representation is an issue traditionally considered in connection

with class certification and involves two questions: "(1) whether the class

representatives have interests antagonistic to the interests of other class members;

and (2) whether the proposed class' counsel has the necessary qualifications and

experience to lead the litigation." *Columbus Drywall & Insulation, Inc. v. Masco

Corp.*, 258 F.R.D. 545, at 555 (N.D. Ga 2007). The Class Representatives are

adequate because they share the same interests as absent Class Members, assert the

---

[3]    This framework tracks the traditional approach, and since the 2018 amendments, courts in this Circuit have continued to weigh the *Bennett* factors. *See, e.g., Berman v. General Motors, LLC*, 2019 WL 6163798, at *3 (S.D. Fla. Nov. 18, 2019); *Gumm v. Ford*, 2019 WL 2017497, at *2 (M.D. Ga. May 7, 2019).

same claims stemming from the same harm, and share the same injuries. Further, the Court already recognized Class Counsel's experience and qualifications in appointing them to lead the case, and the record shows that Class Counsel has worked diligently to bring this case to resolution. (Doc. 48).

"There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."). In that light, courts should consider "the degree of case development that class counsel has accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1348 (S.D. Fla. 2011) (internal quotations omitted); *see also* Fed. R. Civ. P. 23(e)(2)(A) (identifying whether "the class representatives and class counsel have adequately represented the class" to be a relevant factor).

Here, the Settlement Agreement was achieved only after several years of litigation, including pre-mediation statements outlining the parties' respective positions, a formal mediation with a retired federal magistrate judge, months of back-and-forth between counsel for the parties, fully briefed summary judgment and class certifications motions; and thereafter, to finalize the Settlement Agreement.

(Doc.47-2); *see also* Ex. 1 at ¶ 13. Plaintiffs were thus fully apprised of all the facts, risks, and obstacles involved with continued litigation and thoroughly vetted all possibilities to achieve the best possible result for Class Members.

More broadly, the Plaintiffs and Class Counsel are adequate if "counsel are qualified, experienced, and generally able to conduct the proposed litigation," and the "plaintiff[] [does not] have interests antagonistic to those of the rest of the class." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). "In a case where experienced counsel represent the class, the Court absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel." *Ingram*, 200 F.R.D. at 691 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

Plaintiffs' claims are aligned with the claims of the other Class Members. They had every incentive to vigorously pursue the claims of the Class as they have done by remaining actively involved in this matter since its inception, participating in discovery and remaining involved in the settlement process. Additionally, Plaintiffs retained law firms with extensive experience litigating FCRA class actions in particular. *Id.* at ¶ 11.

Plaintiffs and Class Counsel believe that the Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Class. *Id.* at ¶ 13. Class Counsel also believes that the benefits of the Settlement Agreement far outweigh the delay and considerable risk of either an adverse ruling on the class certification motion or proceeding to trial. *Id.* at ¶ 14. Because Plaintiff and Class Counsel have adequately represented the Class, this factor supports approval.

### 2.    The Proposed Settlement Was Negotiated at Arm's Length.

Not only was the Settlement Agreement negotiated at arm's length, but it was done with the assistance of a well-respected mediator.  "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *see also In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) ("The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arms' length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator[.]").[4]

---

[4]    *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] . . .helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of
*Footnote continued on next page*

Here, the parties negotiated their settlement with a respected, nationally renowned mediator in Seattle, Lou Peterson. *See Ingram*, 200 F.R.D. at 693 ("The fact that the entire mediation was conducted under the auspices of Mr. Peterson, a highly experienced mediator, lends further support to the absence of collusion."). Indeed, even with Mr. Peterson, who was instrumental in assisting the parties in this case, the mediation was in multiple sessions over a six-month period. There can be no doubt that the parties negotiated their settlement at arm's-length, lacking any indicia of fraud or collusion. *See Wilson v. Everbank*, No. 14-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by a nationally renowned mediator).

### 3.    The Relief is Fair, Reasonable, and Adequate

Class Counsel has been collectively involved in numerous, both FCRA and other consumer, class actions over the last decade and strongly believe the relief negotiated is fair, reasonable, and adequate. Ex. 1 at ¶ 11,13. The Court may rely upon such experienced counsel's judgment. *See, e.g., Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or

---

an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

the like, the district court should be hesitant to substitute its own judgment for that of counsel.").

Further, the Class Members have embraced the Settlement Agreement. To date, there were no objections to the settlement nor did any Class Member elect to opt-out. This lack of objectors in comparison to the class size is entitled to significant weight. *See Lipuma v. Am. Express Co*., 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) ("[A] low percentage of objections points to the reasonableness of a proposed settlement and supports its approval"); *In re Home Depot, Inc. Customer Data Sec. Breach Litig*., 2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016) (same). *Accord Lunsford v. Woodforest Nat'l Bank*, 2014 WL 12740375, at *8 (N.D. Ga. May 19, 2014) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

That the relief is fair, reasonable, and adequate is further confirmed by considering four specific factors enumerated in new Rule 23(e)(2)(C).

> a)    *The Risks, Costs, and Delay of Continued Litigation*

At the time of the Settlement, Class Counsel had conducted a thorough factual and legal investigation, gone through the motion to dismiss stage, reviewed hundreds of documents and taken multiple depositions, fully briefed motions for both summary judgement and class certification, and advanced considerable sums of money for travel and mediation. As a result, Class Counsel were armed with

sufficient knowledge of the law and facts to fairly weigh the benefits of the Settlement Agreement against the potential of continued litigation. See Ex. 1 at ¶ 14. The cost and delay of continued litigation are obviously substantial. But for the Settlement Agreement, the parties would likely incur hundreds of thousands of dollars in additional legal fees and expenses in trial and appellate proceedings. Trial likely would not occur earlier than 2021, and appeals would almost certainly delay a final resolution for years thereafter.

If the Settlement Agreement is not approved, Starbucks will surely renew its arguments and defenses. Class certification outside of the settlement context also poses a significant challenge. *See, e.g.*, *Adkins v. Facebook, Inc.*, No. C 18-05982-WHA, Doc. 261 (N.D. Cal. Nov. 26, 2019) (denying a motion to certify data breach damages class under Rule 23(b)(3)). Even if the Class Representatives prevail on all legal issues, they face the risks that causation cannot be proved, further discovery will not support their factual allegations, a jury might find for Starbucks, and an appellate court might reverse Plaintiffs' judgment.

### b)    *The Method of Distributing Relief is Effective*

The distribution process is efficient and effective. As described above and in the declarations supporting preliminary approval, Class Members can easily file claims and Class Counsel have taken the extraordinary step of contacting all Tier 3 claimants directly to assist with processing their claims.  Neither the Tier 2 nor Tier

3 requirements create onerous or unreasonable conditions. Furthermore, JND is highly regarded with vast experience in handling millions of claims in large class cases.

*c)    The Terms Relating to Attorneys' Fees are Reasonable.*

As described in their Motion for Attorneys' Fees and Expenses (Doc. 49), Class Counsel is requesting a lodestar fee in accordance with Eleventh Circuit precedent that, even when viewed as a constructive common fund, is well below the benchmark when the total potential recovery is considered, was negotiated at arm's length, and is well justified under the facts and law. The request for fees and expenses is thus eminently reasonable and should be approved.

*d)    Agreements Required to be Identified by Rule 23(e)(3).*

The parties previously submitted the Settlement Agreement (Doc. 47-2), which contains the specific terms allowing Starbucks to terminate the Settlement if more than a certain number of Class Members opted out. Specifically, Starbucks has in its sole discretion the ability to terminate the Settlement Agreement if there are more than 400 requests for exclusion (which represents 5% of the total class). The time period for requesting exclusion has past and this provision was not triggered, and thus it does not affect the adequacy of the relief obtained here. *Id.* at ¶ 3.06.

19

4.    Class Members Are Treated Equitably Relative to Each Other.

The Class Members are treated equitably because they all have similar claims arising from the same violation, and they all are treated the same under the Settlement. All Class Members are eligible to claim the various benefits provided by the Settlement if they meet the requirements, including compensation for actual damages if they were unable to obtain employment after being rejected or terminated. Moreover, all Class Members—even those who do not request the additional relief under Tier 2 and Tier 3—benefit from automatically receiving a $125.00 non-expiring and fully transferable Starbucks gift card. To the extent they reapply, they also benefit from Starbucks' improved background screening policy implemented as a result of this litigation.  Ex. 1 at ¶ 9.

**B.    The Court Should Certify the Proposed Settlement Class Because the Rule 23(a) Requirements Are Satisfied.**

1.    Numerosity:

The proposed Class consists of 8,000 former Starbucks applicants or employees, making joinder impracticable. Further, hundreds have already filed Claims under either Tier 2 or Tier 3, which far exceeds the threshold for numerosity. Doc. 48 at ¶ 3(a).

2.    Commonality:

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury," such that "all their claims can productively be

litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011). All Class Members are asserting the same legal claims under the FCRA, suffered the same injury from the same exact conduct. Accordingly, common questions of law and fact abound. Doc. 48 at ¶ 3(c).

    3.   <u>Typicality:</u>

This requirement is readily satisfied in failed adverse action procedures in employment background screens. The Class Representatives' claims are typical of other Class Members because they arise from the same acts committed by Starbucks and involve the same legal theories. Doc. 48 at ¶ 3(b).

    4.   <u>Adequacy of Representation:</u>

As noted above and in their brief responding to objections, Plaintiffs do not have any interests antagonistic to other Class Members and have retained lawyers who the Court has already recognized are abundantly qualified and experienced, thus satisfying the adequacy requirement. Doc. 48 at ¶ 3(d).

**C.  The Requirements of Rule 23(b)(3) Are Also Satisfied**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." One part of the superiority analysis – manageability – is irrelevant for purposes of certifying a settlement class. *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 620 (1997).

    1.   <u>Predominance:</u>

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. at 623. "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . relief." *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 985 (11th Cir. 2016). Here, as in other FCRA employment background cases, common questions predominate because all claims arose out of a common course of conduct by Starbucks, and the only significant individual issues involve damages, which rarely present predominance problems. *See, e.g., Brown v. Electrolux Home Prods*., Inc., 817 F.3d 1225, 1239 (11th Cir. 2016) (individualized damages generally do not defeat predominance); *Home Depot*, 2016 WL 6902351, at *2 (same); *Anthem*, 327 F.R.D. at 311-16 (same). *See also Dukes v. Air Canada*, No. 8:18-cv-2176, 2020 WL 487152, at *5 (M.D. Fla. Jan. 27, 2020) (approving $83.22 per class member for alleged 1681b(b)(3) violation); *Crosby v. Core-Mark Distributors, Inc.*, No. 1:15-cv-04918-SCJ-JFK, Doc. No. 47 (N.D. Ga. April 16, 2018) (approving $300 per class member for alleged 1681b(b)(3) violation); *Reardon v. Closet Corp.*, No. 2:08-cv-01730, Doc. No. 213, 220 (W.D. Pa. June 13, 2014) (approving $400 per class member for alleged 1681b(b)(3) violation). Doc. 48 at ¶ 4(b).

2.    <u>Superiority</u>:

"The inquiry into whether the class action is the superior method for a particular case focuses on increased efficiency." *Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692, 700 (S.D. Fla. 2004) (internal quotation omitted). Litigating the same claims of eight thousand former Starbucks Applicants through individual litigation would be far less efficient than resolving them all together here. Moreover, as many, if not most, class members would be unlikely to bring claims on an individual basis due to practicability or economic concerns or not knowing that such claims could be brought, a class action is superior as it allows those class members a vehicle for relief. The superiority requirement thus is satisfied. Doc. 48 at ¶ 4(a).

**D.    Notice to the Settlement Class Complied with Due Process and Rule 23 and Is Best Practicable Notice.**

"Rule 23 requires that notice to class members be the 'best notice practicable under the circumstances[.]'" *Lopez v. Hayes Robertson Grp., Inc.*, No. 13-10004-CIV-MARTINEZ, 2015 WL 5726940, at *6 (S.D. Fla. Sept. 29, 2015). But "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (collecting cases).

In directing notice to Class Members, this Court previously determined that the notice program meets the requirements of due process and applicable law,

constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all individuals entitled thereto.  (Doc. 48 at ¶ 6).

The notice plan has now been successfully implemented and reached over 94% of the Class by the notice date, which was several months before the objection and opt-out deadlines. The class notice and notice process approved by this Court and implemented by JND adequately informed Class Members of the nature of the action and these proceedings, the terms of the proposed settlement, the effect of the action and release of these claims, the right to exclude themselves from the action, and their right to object to the proposed settlement as required for final approval of a class settlement under Federal Rule of Civil Procedure 23 and constitutional due process.

The notice program in this case was the best practicable notice and was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See, e.g., Phillips Petroleum  Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

 It therefore meets or exceeds the minimum due process requirements, as it was proposed by seasoned counsel for the parties, approved by the Court, and implemented by a highly respected class administrator. Further, it provided the best practicable notice format of email with follow up mailings when the emails bounce or are unknow. This combination of factors employed in the administration and

24

notice plan was sufficient to result in a substantial percentage of Class Members responding favorably to the Settlement Agreement despite being sent during the early stages of the Covid-19 pandemic. The notice program therefore exceeded due process requirements.

### E.    Other General Considerations Supporting Approval

#### 1.    Broad Discretion of the Court

This Court has broad discretion to approve or reject a proposed settlement. A settlement merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) § 21.61 (2015). The Court has made an initial finding that the settlement is fair, reasonable, and adequate and that the requirements of Rule 23(a) appear to be met, and notice has been sent. *See* Doc 48 at ¶ 2-3. The Court should use its discretion to reaffirm its preliminary approval of the Settlement Agreement by issuing a final order of approval.

#### 2.    Consideration of Several *Bennet* Factors Gives Additional Support for Approval of the Settlement

Before approving a class settlement in the Eleventh Circuit, district courts were historically required to carefully consider an evolved checklist of factors to make sure the settlement was objectively fair and which included an analysis of: "(1) the influence of fraud or collusion on the parties' reaching a settlement, (2) 'the

likelihood of success at trial,'(3) 'the range of possible recovery,' (4) 'the complexity, expense[,] and duration of litigation,' (5) 'the substance and amount of opposition to the settlement,' and (6) 'the stage of proceedings at which the settlement was achieved.'" *Melanie K.*, 2015 WL 1799808, at *2 (quoting *Bennet v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

Not only does the settlement satisfy the amended Rule 23 core considerations, but the settlement in this case satisfies all relevant *Bennet* factors. *See Bennet v. Behring Corp.*, 96 F.R.D. 343, at 349-50 (S.D. Fla. 1982) (noting that the plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

"In most situations, unless the settlement is inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Newberg on Class Actions*, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial[.]" *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler*

*Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 319 ("In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.") (internal citation omitted).

a)    *Range of Reasonableness*

In light of the benefits of the settlement, the parties' settlement falls within "a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 323; *see also id.* at 326 (A court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation."). Indeed, "it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Id.* (internal citation omitted).[5]

---

[5]    In determining whether a settlement is fair in light of the potential range of recovery, the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. *See In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011). This is because a settlement must be evaluated in light of the attendant risks associated with litigation. *Id.*

Furthermore, the Settlement Agreement provides Class Members with real monetary relief, in which all 8,000 class members automatically get a freely transferable and non-expiring $125.00 gift card to one of America's most popular companies.

> b) *Settlement Occurred at Late Stage of Litigation with Full Appreciation of Risks*

The *Bennet* factors still allow the Court to consider the stage of the proceedings in determining whether a class action settlement is fair, adequate, and reasonable. This case settled only after the completion of extensive discovery, motion practice, and protracted mediation. Entering mediation, both parties were well informed about the strengths and weaknesses of their respective cases, and a settlement was only reached after discussions that followed a formal mediation with the assistance of an experienced mediator, Lou Peterson, and by continuing discussions for many months thereafter. Class Representatives only agreed to settle because the Settlement Agreement provides an excellent result for Class Members.

> c) *Counsel for Plaintiffs Are Convinced That the Parties' Agreement Is Fair, Reasonable, Adequate, and in the Best Interests of the Class Members*

Courts should also consider the judgment of experienced counsel. *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 691 (N.D. Ga. 2001). Class counsel—whose qualifications collectively include extensive experience and many decades of

practice with FCRA class actions—believe that the settlement is fair, reasonable, and adequate, and in the best interests of the members of the Class. Class Counsel also believes that the benefits of the parties' settlement far outweigh the delay and considerable risk of proceeding to trial. "In a case where experienced counsel represents the class, the Court absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel." *Ingram*, 200 F.R.D. at 691 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

As discussed above, the Settlement Agreement is a strong result for Class Members, particularly those making both Tier 2 and Tier 3 claims. The Tier 3 benefit provides real and meaningful actual damages that approximate damages these individuals may have incurred when they were terminated due to adverse information in their Starbucks background screen that belonged to someone else and were unable to promptly get another job.

### F.    Attorneys' Fees, Expenses and Service Awards

Class Counsel has applied separately for attorneys' fees and litigation expense award of no more than $1.265 million. Further, the fees, costs and service awards

totaling no more than $20,000 are uncontested. (Doc. 52). For the reasons referenced in the briefing of that motion, these amounts are reasonable and should be awarded.

## IV.    CONCLUSION

Plaintiffs respectfully request that this Court (1) grant final approval to the parties' proposed Settlement Agreement as fair, reasonable, and adequate, (2) certify the proposed Settlement Class for purposes of settlement, (3) approve an individual settlement and service award of $10,000 to each named Class Representative, (4) award attorneys' fees and costs in the amount of $1,265,000 and (4) enter a final judgment and order, in the form of the draft proposed order that was labeled Exhibit G at Doc. 47-9.

Respectfully submitted,

*/s/ James M. Feagle*

**SKAAR & FEAGLE, LLP**
James M. Feagle
Georgia Bar No. 256916
Cliff R. Dorsen
Georgia Bar No. 149254
2374 Main Street, Suite B
Tucker, GA 30084
Telephone: (404) 373-1970
Facsimile: (404) 601-1855

Kris Skaar
Georgia Bar No. 649610
Justin T. Holcombe
Georgia Bar No. 552100
133 Mirramont Lake Drive
Woodstock, GA 30189
Telephone: (770) 427-5600

**FRANCIS MAILMAN SOUMILAS P.C.**
John Soumilas (*pro hac vice*)
David A. Searles (*pro hac vice*)
Jordan M. Sartell (*pro hac vice*)
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com
jsartell@consumerlawfirm.com

**O'TOOLE, McLAUGHLIN, DOOLEY &
PECORA, CO., LPA**
Matthew A. Dooley (Ohio #0081482)
Anthony R. Pecora (Ohio #0069660)
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone: (440) 930-4001
Facsimile: (440) 934-7208
apecora@omdplaw.com
mdooley@omdplaw.com

*Attorneys for Plaintiffs and the Class*

31

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1.C and 7.1.D of the Northern District of Georgia, that the foregoing was prepared in 14-point Times New Roman font.

July 2, 2020

*/s/*     James M. Feagle

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

July 2, 2020


*/s/*     James M. Feagle